UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 16, 2017

LETTER TO COUNSEL

      RE:    *Dyyanna R. Sellers v. Commissioner, Social Security Administration*
              Civil No. SAG-17-268

Dear Counsel:

On January 31, 2017, Plaintiff Dyyanna R. Sellers petitioned this Court to review the Social Security Administration's final decision to deny her claim for Children's Insurance Benefits ("CIB"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 24, 25, 28). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Ms. Sellers filed her CIB claim on September 25, 2012. (Tr. 177-80). Her claims were denied initially and on reconsideration. (Tr. 73-77, 79-85). A hearing was held on August 6, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 30-72). Following the hearing, the ALJ determined that Ms. Sellers was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-29). Thereafter, Ms. Sellers requested that the Appeals Council review the ALJ's decision. (Tr. 7-12). The Appeals Council denied Ms. Sellers's request for review, (Tr. 1-6), so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that, prior to age 22, Ms. Sellers suffered from the severe impairment of major depressive disorder. (Tr. 18). Despite this impairment, the ALJ determined that Ms. Sellers, prior to attaining age 22, retained the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: could perform simple, routine, and repetitive tasks, in a low stress work environment, with low stress defined as no strict production quotas; and could only occasionally interact with the public, coworkers, and supervisors.

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Sellers, prior to attaining age 22, could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 25).

Ms. Sellers raises three primary arguments on appeal: (1) that the ALJ failed to engage in a proper analysis of Listing 12.04; (2) that the ALJ failed to properly weigh the opinions of treating physician Dr. Stephanie Tucker, M.D.; and (3) that the ALJ erroneously found that she could perform jobs that exist in significant numbers in the national economy. [ECF No. 24 at 16, 18, 23]; [ECF No. 28]. These arguments are addressed, in turn, below.

I.  **Medical Listing Issue 12.04**

Ms. Sellers argues that substantial evidence does not support the ALJ's conclusion regarding Listing 12.04, "Affective Disorders." [ECF No. 24 at 16-18]. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. § 12.00(A). If the ALJ finds that the claimant has medically documented persistence of an objective symptom of an affective disorder, signaling an affective impairment (the "Paragraph A" factors), the ALJ is instructed to rate the degree of functional limitation resulting from a claimant's impairment(s) with respect to the following factors: activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation (the "Paragraph B" factors). *See id.* § 12.04. The listing is met if a claimant can show any two of the following: marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, concentration, persistence, or pace, and repeated episodes of decompensation (defined as three episodes within one year, or an average of once every four months, each lasting for at least two weeks). *Id.* If both the Paragraph A criteria and the Paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment. *Id*. § 12.00(A).

A listing may also be met if the ALJ finds that a claimant meets the "Paragraph C" factors; that is, the claimant has a "medically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and which has led to either repeated episodes of decompensation, each of extended duration, a "residual disease process" that is so strenuous that even a minimal change in mental demands would cause the claimant to decompensate, or inability to function outside of a "highly supportive living arrangement" for more than one year. *Id.*

With respect to Paragraph B factors, the ALJ found that Ms. Sellers had only mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence or pace. (Tr. 19). Further, the ALJ determined that Ms. Sellers had experienced no episodes of decompensation of extended duration. *Id.*

Ms. Sellers contends that the ALJ's findings regarding Listing 12.04 were unsupported by substantial evidence because he failed to discuss the Paragraph A criteria and mischaracterized the evidence pertaining to her daily activities, social functioning, abilities

regarding concentration, persistence, or pace, and episodes of decompensation. [ECF No. 24 at 17-18]. I disagree. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). First, because Listing 12.04 is only met by "satisfying the paragraph A and B criteria, or the paragraph C criteria," the ALJ did not err in failing to discuss the Paragraph A criteria, as long as his analysis that Ms. Sellers did not satisfy the Paragraph B criteria was proper. *See Mateus v. Colvin*, No. 5:14-CV-873-D, 2015 WL 9805821, at *10 (E.D.N.C. Nov. 16, 2015), *objections overruled*, No. 5:14-CV-873-D, 2016 WL 183910 (E.D.N.C. Jan. 14, 2016). Here, I find that the ALJ properly analyzed the Paragraph B factors. In terms of Ms. Sellers's daily activities, the ALJ accurately cited her testimony that: (1) she had no problems driving; (2) attended church at least twelve times per month, including youth worship and Bible study; (3) completed household chores; (4) and walked the dog. (Tr. 19, 48, 58-60). The mere fact that "she had no choice but to go," [ECF No. 24 at 18], to church is not atypical of children and does not render the ALJ's finding of "mild restriction" unsupported by substantial evidence. Likewise, in finding Ms. Sellers had "moderate difficulties" in social functioning and concentration, persistence, or pace, the ALJ credited her testimony that she isolated herself at times during youth worship, attended school, and worked in the music industry and as a computer technician. (Tr. 19, 37-42, 45-47, 49). The ALJ further cited to Exhibit 7F, which demonstrated: (1) that her "speech was coherent, spontaneous with good associations, and goal directed;" (2) that her affect was not inappropriate; (3) that her immediate, recent, and remote memory were fully intact; and (4) that her concentration, serial sevens, and abstract thinking were "all good." (Tr. 19, 930). Thus, despite Ms. Sellers's contention that her work in the music industry and as a computer technician was "non-existent," the ALJ's reliance on Exhibit 7F and Ms. Seller's remaining testimony fully supports the finding that she had only "moderate difficulties" in these categories.

Because the ALJ provided adequate analysis with supporting evidentiary citations regarding the medical listing, there is no basis for remand on this ground.

## II.    The Opinions of Dr. Stephanie Tucker

Next, Ms. Sellers argues that the ALJ erred in giving "no weight" to the opinions of treating physician Dr. Stephanie Tucker, MD. (Tr. 23); [ECF No. 24 at 19-23]. The ALJ assigned the opinions "no weight" because Dr. Tucker did not examine Ms. Sellers until "almost 11 years after [her] attainment of age 22 . . . [and because] Dr. Tucker's opined limitations [were] not supported by the objective medical evidence of record . . . but [were] purely based upon the claimant's subjective reported history." (Tr. 23).

"To establish eligibility for [DIB], a claimant must show that he became disabled before his DLI" (last date he was insured). *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Moreover, "[m]edical evaluations made after a claimant's [DLI] are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Id.* Thus, where post-DLI medical evidence "could be 'reflective of a possible earlier and progressive degeneration,'" the ALJ must "give retrospective consideration

to" the post-DLI evidence. *Id.* at 340-41 (quoting *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987). Importantly, retrospective consideration "is especially appropriate when corroborated by lay evidence," such as the claimant's or third-party testimony. *Id.* at 342. Where post-DLI medical evidence is not "reflective" of impairments that existed before a claimant's DLI, however, an ALJ is "not required to give the new assessment retrospective consideration." *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

Ms. Sellers relies on *Bird* for the proposition that the ALJ erred by failing to "give retrospective consideration to" Dr. Tucker's findings. [ECF No. 24 at 20-22]. In *Bird*, a marine alleged he suffered from PTSD as a result of his combat service in Vietnam from 1967-1970. 699 F.3d at 338. He filed for DIB "after the last date he was insured for purposes of qualifying for" DIB. *Id.* at 339. Importantly, Bird had "no medical records dating before his DLI" and, prior to filing for DIB, had "not obtained medical treatment for many years." *Id.* The ALJ denied benefits, in part, because he assigned "little weight" to the opinion of Bird's treating physician as "it failed to reflect Bird's pre–DLI condition." *Id.* at 340. The Fourth Circuit vacated and remanded, holding that Bird's testimony, together with third-party corroboration, "provided a sufficient linkage 'reflective of a possible earlier and progressive degeneration,' requiring that the ALJ give retrospective consideration to the [] evidence summarized in" the physician's report. *Id.* at 342 (citation omitted).

Here, I agree that the ALJ erred in failing to give "retrospective consideration" to Dr. Tucker's findings. Dr. Tucker opined that: (1) Ms. Sellers's depression was first diagnosed at age twelve; (2) she has suffered from "severe and persistent depression since" her diagnosis; (3) she is "persistently suicidal;" (4) she lives with a full-time caretaker; and (5) she requires "24-hour supervision and the support of a psychiatrist and therapist in the community." (Tr. 959). The few medical records from the relevant time frame corroborate the existence of severe depression and suicidal tendencies. Indeed, the 1999 medical report that the ALJ relied upon in finding that Ms. Sellers had "moderate difficulties" in concentration, persistence, or pace also noted that Ms. Sellers had suicidal tendencies and was prescribed Prozac. (Tr. 930). Together with Ms. Sellers's testimony, then, the "record provided a sufficient linkage 'reflective of a possible earlier and progressive degeneration,'" which required the ALJ to give "retrospective consideration to" Dr. Tucker's opinion. *Bird*, 699 F.3d at 342. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Sellers is not entitled to benefits is correct.

### III.    The ALJ's Reliance on the VE's Testimony

Additionally, Ms. Sellers argues that the ALJ erroneously relied upon the testimony of the VE for three reasons: (1) there was no evidence that jobs within her RFC existed during the relevant time period (1996-2000); (2) the ALJ failed to resolve conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (3) the hypothetical posed to the VE did not properly account for her "moderate" difficulties in concentration, persistence, or pace. [ECF No. 24 at 23-29]. After a careful review of the ALJ's opinion and the evidence in the record, I disagree.

First, Ms. Sellers argues that because the ALJ's hypothetical questions regarding the number of jobs existing in the national economy were posed to the VE, and answered by the VE, in the present tense, the VE did not address the relevant time frame and, as such, there is "no evidence" that the jobs were available between 1996 and 2000. [ECF No. 24 at 25]. I disagree. As Defendant states, "the VE was present when the ALJ repeatedly questioned [Ms. Sellers] regarding the specific time-period at issue." [ECF No. 25-1 at 13]; (Tr. 34-74). Moreover, immediately prior to providing his analysis on the number of jobs existing in the national economy, the VE expressly agreed with the ALJ that Ms. Sellers's work did not rise to the level of substantial gainful activity. (Tr. 65). The work being referenced was that performed by Ms. Sellers during the relevant time-period from 1996-2000. (Tr. 34-65). Thus, it is clear that the VE understood that he was being questioned about the number of jobs existing in the national economy during the time frame of 1996-2000.

Secondly, Ms. Sellers contends that the ALJ erred in failing to properly inquire as to why the VE's testimony conflicted with the DOT. [ECF No. 24 at 25-26]. Specifically, responding to the ALJ's question of whether his finding that there were jobs existing in significant numbers in the national economy which Ms. Sellers could perform comported with the DOT, the VE replied,

> Your Honor, it has deviated in a couple of areas. I've reduced the numbers based on my experience, and not from the DOT when referring to the limitations about with -- working with the public co-workers and supervisors, and also the limitations of productivity. And again, these were -- I've reduced these numbers about 25 percent based on my experience, and not from the DOT.

(Tr. 68). An ALJ must "'inquire, on the record, ... whether' the vocational expert's testimony 'conflict[s]' with the *Dictionary*," and, if a conflict is present, must "'elicit a reasonable explanation for' and 'resolve' conflicts between the expert's testimony and the *Dictionary*." *Pearson v. Colvin*, 810 F.3d 204, 207-08 (4th Cir. 2015) (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). To rely upon the VE's evidence, the ALJ must determine that the VE's explanation for the conflict is reasonable. *Id.* Here, since the VE is an expert, and the very purpose of his testimony is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform," *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1998), the VE appropriately used his own expertise to supplement the information in the DOT to determine the number of available jobs. Moreover, the VE identified 560,000 jobs in the national economy and 9,400 jobs in the local economy, figures vastly greater than those necessary to find a "significant number of jobs." *Cf. Lawler v. Astrue*, No. 09–1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75–100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy"); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). Ms. Sellers points to no evidence that

the VE's testimony was so erroneous that the accurate numbers fell below a significant number of jobs.

Finally, Ms. Sellers contends that the hypothetical the ALJ posed to the VE was legally insufficient because it did not properly account for her "moderate" difficulties in concentration, persistence, or pace. [ECF No. 24 at 29]. Specifically, though finding at step three that Ms. Sellers had "moderate difficulties" in that area, the ALJ posed a hypothetical to the VE, which incorporated a limitation that an individual "could only perform simple routine, and repetitive tasks in a low stress work environment" (no production quotas). (Tr. 19, 66). This Court has held that such a limitation is adequate under the dictates of *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). *See Davis v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-15-2699, 2016 WL 3814929, at *2 (D. Md. July 12, 2016) (stating that limiting a claimant to a "low stress work environment" (no production quotas) addresses the claimant's "limitation in staying on task" and thus complies with *Mascio*); *Raeke v. Comm'r, Soc. Sec.*, No. CV GLR-15-1726, 2016 WL 892856, at *3 (D. Md. Mar. 9, 2016). As such, the ALJ did not pose an insufficient hypothetical to the VE, and remand is not appropriate on this ground.

## IV.    Conclusion

For the reasons set forth above, Ms. Sellers's Motion for Summary Judgment, [ECF No. 24], is DENIED and Defendant's Motion for Summary Judgment, [ECF No. 25], is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge